## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

MIGUEL MONTERO GUERRA,  )
　　　　　　　　　　　　　　　)
　　　　　Petitioner,　　　　　)
　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　)　　　No. CIV-25-1240-G
　　　　　　　　　　　　　　　)
PAMELA J. BONDI et al.　　　　)
　　　　　　　　　　　　　　　)
　　　　　Respondents.　　　　　)

## REPORT AND RECOMMENDATION

Petitioner, proceeding pro se,[1] filed a petition for habeas corpus under 28 U.S.C. § 2241, challenging his detention by United States Immigration and Customs Enforcement (ICE). Doc. 1.[2] United States District Judge Charles B. Goodwin referred the case to the undersigned Magistrate Judge for initial proceedings under 28 U.S.C. § 636(b)(1)(B), (C). Doc. 3. The United States filed a response. Doc. 10. So the matter is at issue.

---

[1]　　This Court construes "[a] pro se litigant's pleadings . . . liberally," holding them "to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991); *see Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam). The Court, however, may not serve as Petitioner's advocate, creating arguments on his behalf. *See Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008).

[2]　　Citations to a court document are to its electronic case filing designation and pagination. Except for capitalization, quotations are verbatim unless otherwise indicated.

For the reasons set forth below, the undersigned recommends the Court grant Petitioner's request for habeas corpus relief.

## I.    Factual background and procedural history.

Petitioner is allegedly a Cuban citizen. Doc. 10, Ex. 1, at 3. Respondents are currently detaining him within this judicial district. *See* Doc. 1. Petitioner has several criminal convictions:

- August 1, 1989 Dallas County, Texas conviction for possession with intent to deliver cocaine, for which he received a sentence of ten years of confinement;

- September 16, 1997 Dallas County, Texas conviction for aggravated sexual assault, for which he received a sentence of seven years of confinement;

- March 10, 2006 Dallas County, Texas convictions for driving while intoxicated (DWI) and possession of marijuana, for which he was sentenced to 81 days of confinement for his DWI conviction and 60 days for his possession of marijuana conviction, for a total of 141 days; and

- May 3, 2006 Dallas County, Texas conviction for failure to comply with sex offender registration requirements, for which he received a sentence of ten years of confinement, later suspended, and thereafter, placed on a four-year term of community supervision.

Doc. 10, Ex. 1, at 2. On October 1, 2003, Petitioner was ordered removed by an immigration judge (IJ). *Id.* He did not appeal the IJ's order. *Id.* Petitioner was released pursuant to an order of supervision (OOS) by the Department of Homeland Security (DHS). *Id.* On February 11, 2010, Petitioner failed to report as required by the OOS. *Id.* On August 3, 2010, Petitioner was detained by

Enforcement Removal Operations (ERO) for failure to report, and later released on another OOS on October 22, 2010. *Id.*

On July 31, 2025, Petitioner reported to the Dallas, Texas ICE office and was detained. *Id.* at 3. Petitioner met with an ICE officer, who advised him that "he had a final order of removal entered by the IJ on October 01, 2003" and "that if ERO was unable to obtain travel documents for him, he would be released back on an [OOS]." *Id.* Ex. 2, at 1-2. He has been in ICE custody since July 31, 2025, and is detained at the Cimarron Correctional Facility in Cushing, Oklahoma. *Id.* Ex. 1, at 3.

Respondents maintain that ERO has completed Petitioner's required 90-day custody review under 8 C.F.R. § 241.4(l)(3), and that the decision is pending. *Id.*

On October 3, 2025, ICE reached out to Cuba to effectuate Petitioner's removal but received no response. *Id.* Respondents maintain that ERO is currently working on a third country removal to Mexico, which has been accepting Cuban citizens for third country removals. *Id.*

## II.   **Petitioner's claims.**

Petitioner presents two grounds for relief:

Ground One: Respondents violated his due process rights by redetaining him and revoking his OOS.

3

Ground Two: His detention is punitive, arbitrary, and capricious under the Administrative Procedures Act (APA) because Respondents "failed to follow their own regulations."

Doc. 1, at 6.

Petitioner asks the Court to "order his release and reinstate his [prior OOS] . . . and/or anything else deem[ed] just by [the] Court." *Id.* at 7.

## III.    Standard of review.

An application for a writ of habeas corpus "is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Habeas corpus relief is warranted only if the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

## IV.    Discussion.

### A.    Statutory and regulatory framework.

Petitioner contends that his detention is unlawful as he "should not have to wait a substantial period time, had there been any significant likelihood of removal." Doc. 1, at 6.

Section 1231(a) dictates that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." 8 U.S.C.

4

§ 1231(a)(1)(A). "During the removal period, the Attorney General shall detain the alien." *Id.* § 1231(a)(2). The removal period begins on the latest of the following dates:

> (i) The date the order of removal becomes administratively final.
>
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
>
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

*Id.* § 1231(a)(1)(B).

The removal period may be extended "and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents . . . or conspires or acts to prevent the alien's removal." *Id.* § 1231(a)(1)(C).

Finally, detention of an alien subject to a final order of removal may not be indefinite and is presumptively reasonable for only six months beyond the removal period. *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001). After that, the detainee may bring a habeas action to challenge his detention. *Id.* at 684-85, 688. To obtain habeas relief, the petitioner has the initial burden to show "there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701. Presuming the petitioner does so, the burden shifts,

5

requiring "the Government [to] respond with evidence sufficient to rebut that showing." *Id.*

**B.    The Court has jurisdiction to hear Petitioner's claims.**

The undersigned begins with a summary of the Court's circumscribed jurisdiction under 8 U.S.C. § 1252 as Respondents maintain that the Court lacks jurisdiction to hear Petitioner's habeas claims. Doc. 10, at 17.

Section 1252(g) provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders." 8 U.S.C. § 1252(g). Section 1252(g) is a "jurisdiction-stripping 'zipper clause,'" which "channel[s] review of all 'decisions and actions leading up to or consequent upon final orders of deportation' in the courts of appeal, following issuance of an order of removal." *Mukantagara v. DHS*, 67 F.4th 1113, 1115 (10th Cir. 2023) (quoting *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482-85 (1999)).

Section 1252(g) is to be read narrowly, *Reno*, 525 U.S. at 482, and it does not cover "all claims arising from deportation proceedings" or impose "a general jurisdictional limitation." *Id.* Instead, it "applies only to three discrete actions that the Attorney General may take: her 'decision or action' to 'commence proceedings, *adjudicate* cases, or *execute* removal orders.'" *Id.* Further, the

Supreme Court has noted that it is "implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings." *Id.*

The undersigned is not persuaded § 1252(g) restricts review of Petitioner's due process claim. "[C]laims that clearly are included within the definition of 'arising from' . . . [are] those claims connected *directly and immediately* with a 'decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders.'" *Tsering v. ICE*, 403 F. App'x 339, 343 (10th Cir. 2010) (quoting *Humphries v. Various Fed. USINS Emp.,* 164 F.3d 936, 943 (5th Cir. 1999)).

Respondents contend that Petitioner challenges the Attorney General's action taken to execute his order of removal, which precludes the Court from reviewing his claim. Doc. 10, at 16. Respondents misread Petitioner's due process claim. Petitioner does not ask the Court to review the Attorney General's decision to act on the order of removal, which would be beyond the Court's purview. Instead, he argues, in part, that ICE failed to comply with its own regulations when it revoked his OOS and the improper revocation violated his due process rights. *See Barrios v. Ripa*, 2025 WL 2280485, at *5 (S.D. Fla. Aug. 8, 2025) ("[T]he Court does have jurisdiction to adjudicate whether Respondents complied with their own [OOS] revocation procedures.").

7

Likewise, for similar reasons, Respondents' fleeting reference to 8 U.S.C. § 1252(b)(9) also fails to deprive the Court of jurisdiction. Doc. 10, at 18. Section 1252(b)(9) provides that "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States . . . shall be available only in judicial review of a final order under this section." *Id.* § 1252(b)(9). Section 1252(b)(9) "does not present a jurisdictional bar," when, as is the case here, detainees "are not asking for review of an order of removal," "challenging the decision to detain them in the first place or to seek removal," or "challenging any part of the process by which their removability will be determined." *Jennings v. Rodriguez*, 583 U.S. 281, 294-95 (2018).

### C.    Petitioner's failure to name the proper custodian.

Respondents also argue this Court should dismiss the petition because Petitioner has failed to name his immediate physical custodian as a Respondent. Doc. 10, at 24-25. The Court granted Petitioner's request to add as Respondents the Secretary of Homeland Security, the Acting Director of ICE, ERO Acting Executive Associate Director, and the warden of Cimmaron Correctional Facility as Respondents in this matter. Doc. 12. So the

undersigned recommends the Court deny Respondents' request to dismiss on this basis as moot.

**D.    Respondents improperly revoked Petitioner's OOS.**

Petitioner alleges that his detention is unlawful as Respondents violated his due process rights in the process of revoking his existing OOS. Doc. 1, at 6. Specifically, Petitioner alleges that his OOS was revoked "without any notice of revocation" and that he was not "given a reason for the revoking of his OOS." *Id.* at 2, 6.

"'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings." *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (per curiam) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). The Due Process Clause is also implicated where "an individual has reasonably relied on agency regulations promulgated for his guidance or benefit and has suffered substantially because of their violation by the agency." *United States v. Caceres*, 440 U.S. 741, 752-53 (1979).

Section 1231(a)(3) governs the revocation of Petitioner's OOS, as he was released from ICE detention on October 22, 2010. Doc. 10, Ex. 1, at 2.[3]

---

[3]    Petitioner was also released and placed on an OOS following the final order of removal issued in 2003. Doc. 10, Ex. 1, at 2.

Respondents contend that the revocation of Petitioner's OOS was governed solely by 8 C.F.R. § 241.4 rather than § 241.13. Doc. 10, at 19-20. The undersigned agrees.

The parties have not provided the Court with a copy of the revoked OOS, but Respondents do not indicate that the OOS was issued due to a determination that there was "no significant likelihood of removal in the reasonably foreseeable future" under § 241.13. Therefore, the Court presumes that Petitioner's OOS was issued pursuant to § 241.4, as Petitioner has failed to rebut Respondents' position. *See* 8 C.F.R. § 241.13(b)(1); *see e.g., Momennia v. Bondi*, No. CIV-25-1067-J, 2025 WL 3011896, at *4 (W.D. Okla. Oct. 15, 2025) ("Mr. Momennia alleges that his release was revoked . . . pursuant to § 241.13(i). This is incorrect. Section 241.13(i) provides that procedures for a <u>revocation</u> of release under this section are only applicable when the alien was <u>originally released</u> under an [OOS] "under <u>this</u> section.") (internal citations omitted), *adopted*, 2025 WL 3006045 (W.D. Okla. Oct. 27, 2025); *cf. Pham v. Bondi*, No. CIV-25-1157-SLP, 2025 WL 3477023, at *3 (W.D. Okla. Oct. 30, 2025) ("Respondent states that when it detained Petitioner '[he] was informed that he would be detained because he was subject to a final order of removal and there is *now* a likelihood of removal to Vietnam'" . . . "[s]o, it is reasonable to infer that ICE must have made a determination that 'there was no

significant likelihood of removal in the reasonably foreseeable future' before issuing the OOS in 2005."), *adopted*, 2025 WL 3243870 (W.D. Okla. Nov. 20, 2025).

Respondents contend that Petitioner's OOS was not revoked due to violations of his conditions of release, but instead pursuant to 241.4(l)(2). Doc. 10, at 19-20. Section 241.4 "govern[s] the detention of aliens under a final order of removal . . . unless the Service makes a determination under [§ 241.13] that there is no significant likelihood of removal in the reasonably foreseeable future." 8 C.F.R. § 241.13(b)(1). Section 241.4(l)(2) grants ICE "exceptionally broad authority . . . to revoke release under § 241.4." *Momennia,* 2025 WL 3011896, at *4. Still, even though "[t]he lawful revocation of Petitioner's supervised release presents a low bar to the Government," the Government must still comply with its regulations. *E.M.M. v. Almodovar*, 2025 WL 3077995, at *6 (S.D.N.Y. Nov. 4, 2025).

Section 241.4(l)(2) provides that:

**The Executive Associate Commissioner shall have authority, in the exercise of discretion, to revoke release and return to Service custody an alien previously approved for release under the procedures in this section.** A district director may also revoke release of an alien when, in the district director's opinion, revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner. Release may be revoked in the exercise of discretion when, in the opinion of the revoking official:

(i) The purposes of release have been served;
(ii) The alien violates any condition of release;
(iii) It is appropriate to enforce a removal order or to commence
removal proceedings against an alien; or
(iv) The conduct of the alien, or any other circumstance, indicates
that release would no longer be appropriate.

8 C.F.R. § 241.4(l)(2) (emphasis added).

Respondents state that Petitioner was informed that "he had a final order of removal," Doc. 10, Ex. 2, at 1, so it appears that Respondent relied on its "exceptionally broad authority" under § 241.4(l)(2) to revoke his supervised release "to enforce" Petitioner's removal order.

Following revocation of an OOS under § 241.4(l)(2), ICE is required to provide an informal interview, and then, a 90-day custody review. 8 C.F.R. § 241.4(l)(3).

Respondents contend that § 241.4(l)(2) contains "no requirement that Petitioner receive an interview after his return to custody," Doc. 10, at 20, but this assertion contradicts the language of the regulation. Section 241.4(l)(3) provides:

> **If the alien is not released from custody following the
> informal interview provided for in paragraph (l)(1)** of this
> section, the HQPDU Director shall schedule the review process in
> the case of an alien whose previous release or parole from
> immigration custody pursuant to a decision of either the district
> director, Director of the Detention and Removal Field Office, or
> Executive Associate Commissioner under the procedures in this

12

section has been or is subject to being revoked. The normal review process will commence with notification to the alien of a records review and scheduling of an interview, which will ordinarily be expected to occur within approximately three months after release is revoked. That custody review will include a final evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release. Thereafter, custody reviews will be conducted annually under the provisions of paragraphs (i), (j), and (k) of this section.

8 C.F.R. § 241.4(l)(3) (emphasis added).

Respondents do state that they have conducted the required custody review, but more troubling is the apparent lack of notice provided to Petitioner before being detained.[4] Section 241.4(l)(1) provides that "[u]pon revocation, the alien will be notified of the reasons for revocation of his or her release or parole." 8 C.F.R. § 241.4(l)(1). "[C]ourts have 'interpreted section 241.4(l) as requiring an informal interview upon the revocation of release regardless of the reason for the revocation'—meaning that the notice and informal interview requirement stated in [§ 241.4(l)(1)] applies to revocation under [§ 241.4(l)(2)]."

_____

[4]    Respondents have also not attempted to show that the appropriate official exercised their discretion to revoke under § 241.4(l)(2). Failure by the appropriate official to revoke an OOS under § 241.4(l)(2) may constitute a separate ground for granting habeas relief. *See E.M.M.,* 2025 WL 3077995, at *6 (finding unlawful revocation where assistant field officer revoked rather than "the Executive Associate Commissioner or a district director"). Given that Petitioner only cites the lack of notice in his petition, Doc. 1, at 2, the undersigned does not elaborate on this issue any further.

*Grigorian v. Bondi*, 2025 WL 2604573, at \*6 (S.D. Fla. Sept. 9, 2025) (collecting cases) (quoting *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 163 (W.D.N.Y. May 2, 2025)).

Respondents contend that verbally informing Petitioner of the reasons for revocation suffices for Notice under ICE regulations, Doc. 10, at 21, but a review of other district court cases involving renewed detentions to effectuate removal shows that ICE typically will provide the detainee with written notice at some point during detention and provide it to the Court when responding to the detainee's habeas petition. *Zhu v. Genalo*, 2025 WL 2452352, at \*8 (S.D.N.Y. Aug. 26, 2025) (citing cases); *see also Yee S. v. Bondi*, 2025 WL 2879479, at \*2 (D. Minn. Oct. 9, 2025) ("The next day, having already detained Petitioner, ICE served a [Notice] on him."); *see e.g., K.E.O. v. Woosley*, 2025 WL 2553394, at \*6 (W.D. Ky. Sept. 4, 2025) (noting that the United States provided the district court a copy of the Petitioner's Notice to correct deficiencies identified by the Petitioner and recognizing that "[she was] entitled to a Notice . . . pursuant to authority delegated by regulation") internal quotation marks omitted)); *Umanzor-Chavez v. Noem*, 2025 WL 2467640, at \*2 (D. Md. Aug. 27, 2025) (noting that when Petitioner reported to ICE check-in his OOS "was revoked, and he was served with a notice that ICE intends to remove him to Mexico." (internal quotation marks omitted)).

And Respondents do not address, § 214.4(d), which provides that:

> **A copy of any decision** by the district director, Director of the Detention and Removal Field Office, or Executive Associate Commissioner to release or **to detain an alien shall be provided to the detained alien.**

8 C.F.R. § 241.4(d) (emphasis added).

Here, there is no indication that Petitioner received a copy of Respondents' decision to revoke his OOS and detain him. And Respondents have not provided a copy of the decision to the Court. So, the undersigned concludes that Respondents failed to properly revoke Petitioner's OOS. The appropriate remedy for Respondents' unlawful revocation is to reinstate Petitioner's existing OOS that governed his earlier release. *See Pham,* 2025 WL 3243870, at *2; *see e.g., Grigorian,* 2025 WL 2604573, at *10 ("[T]he Government may revoke Petitioner's [OOS] for any of the reasons stated in § 241.4(l)(2)," "[b]ut they may not detain him without offering a meaningful opportunity to contest those reasons."); *E.M.M.,* 2025 WL 3077995, at *6 ("[T]he Government's own regulations . . . grant it enormous discretion regarding when and how the previously-authorized release of removable aliens may be revoked. But that discretion is not unlimited. If the Government does choose to embark upon a campaign of mass removal, the Constitution, its guarantees of due process to all persons present in the United States, and the

rule of law all demand that detention and removal be conducted lawfully.").

Accordingly, the undersigned recommends that the Court grant Petitioner's habeas petition and order his immediate release.[5]

### E.    Petitioner's remaining claims.

The Court should decline to rule on Petitioner's remaining claims as to how the revocation of his release is otherwise unlawful under the APA or whether his detention is unlawful under *Zadvydas* because the Court can grant him relief solely for ICE's failure to follow its own regulations.

### V.    Recommendation and notice of right to object.

For the reasons set forth above, the undersigned recommends the Court grant Petitioner's request for habeas relief, and order his immediate release from custody subject to the terms of his unlawfully revoked OOS. The

---

[5]    Respondents cite *Bahadorani v. Bondi*, No. CIV-25-1091-PRW, 2025 WL 3048932 (W.D. Okla. Oct. 31, 2025) as support for their contention that immediate release is an inappropriate remedy, but Petitioner's case is distinguishable for the same reasons cited by District Judge Palk in *Pham*:

> In *Bahadorani*, the petitioner underwent a particularized interview process regarding their removal after being detained. Here, similar to the facts of [*Roble v. Bondi*, 2025 WL 2443453 at *3 (D. Minn. Aug. 25, 2025)], Respondents only provided a perfunctory and generalized statement to Petitioner regarding the reason for revocation of his release.

2025 WL 3243870, at 1 n.2 (internal citations omitted).

undersigned further recommends that the Court order Respondents submit a declaration pursuant to 28 U.S.C. § 1746 affirming that Petitioner has been released from custody.

The undersigned advises the parties of their right to file an objection to this Report and Recommendation with the Clerk of this Court by January 6, 2026, in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72. The undersigned further advises the parties that failure to make timely objections to this Report and Recommendation waives the right to appellate review of both factual and legal questions contained herein. *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991). This Report and Recommendation disposes of the issues referred to the undersigned Magistrate Judge in the captioned matter.

**ENTERED** this 16th day of December, 2025.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE

17