# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MIGUEL MONTERO GUERRA, | ) |
|     Petitioner, | ) ) ) |
| v. | )   Case No. CIV-25-1240-G |
| PAMELA J. BONDI,<br>A.G. for the United States, et al., | ) ) ) ) |
|     Respondents. | ) |

## ORDER

On October 20, 2025, Petitioner Miguel Montero Guerra, appearing pro se, filed a Petition for Writ of Habeas Corpus ("Petition," Doc. No. 1) challenging his detention by U.S. Immigration and Customs Enforcement pursuant to 28 U.S.C. § 2241. In accordance with 28 U.S.C. § 636(b)(1), the matter was referred to Magistrate Judge Suzanne Mitchell for preliminary review. Respondent Pamela J. Bondi, United States Attorney General, filed a Response (Doc. No. 10) to the Petition.[1]

On December 16, 2025, Judge Mitchell issued a Report and Recommendation ("R. & R.," Doc. No. 13), recommending that the Petition be granted and Petitioner be released from custody. Respondent filed an Objection (Doc. No. 14) to the R. & R. Although Petitioner's time to respond to the Objection has not yet run, the Court proceeds to determine the issues raised in light of the urgency of the circumstances, including

---

[1] On December 4, 2025, Kristi Noem, Secretary of Homeland Security, Todd M. Lyons, Acting Director of Immigration & Customs Enforcement, Marcos Charles, Enforcement and Removal Operations Acting Executive Associate Director, and Cimarron Correctional Facility Warden Scarlet Grant were added as respondents. *See* Order (Doc. No. 12).

Petitioner's imminent removal from the country. *See* Resp't's Notice of Jan. 12, 2026 (Doc. No. 17); Fed. R. Civ. P. 72(b)(2).

Pursuant to controlling authority, the Court reviews de novo the portions of the R. & R. to which specific objection has been made. *See United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). Pro se filings "are to be construed liberally," but the Court will not "assume the role of advocate for the pro se litigant." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

## I.  Background

The factual background is set forth in the R. & R. and is not contested by Respondent. Petitioner appears to be a citizen of Cuba who entered the United States some time in or prior to 1989. *See* R. & R. at 2. On October 1, 2003, Petitioner was ordered removed by an immigration judge; Petitioner did not appeal, and this order became final. *Id.*

Rather than removing Petitioner, the United States, acting through the Department of Homeland Security ("DHS"), released Petitioner subject to an Order of Supervision ("OOS"). *Id.* On February 11, 2010, Petitioner did not report as required by the OOS, and he was detained by Immigrations and Customs Enforcement ("ICE") on August 3, 2010. *See id.* at 2-3. On October 22, 2010, he was again released pursuant to an OOS. *Id.* at 3. There is no evidence that Petitioner has otherwise failed to comply with the conditions of his OOS.

On July 31, 2025, Petitioner reported to an ICE office in Dallas, Texas. *Id.* Petitioner was detained by ICE on that date and has remained in ICE custody since that date. *Id.*

The deportation officer with whom Petitioner met on July 31, 2025, advised Petitioner that Petitioner was subject to the October 1, 2003 Final Order of Removal and that there were no outstanding immigration appeals or applications. *Id.* Petitioner was also informed that if ICE Enforcement Removal Operations ("ERO") could not obtain travel documents to deport him, he would be released again on an OOS. *Id.*

As of November 19, 2025, Respondent represented the following relevant facts to be true: (1) that ERO has completed a 90-day custody review and that a decision had yet to be issued; (2) on October 3, 2025, ICE communicated with Cuban officials in an attempt to arrange Petitioner's deportation to Cuba but received no response; and (3) ERO was attempting to arrange deportation of Petitioner to a third country, Mexico, which has accepted Cuban citizens for third-country removals. *See id.*

When the Petition was filed, Petitioner was being held at the Cimarron Correctional Facility in Cushing, Oklahoma. *Id.* Shortly thereafter, the Magistrate Judge ordered that if the United States determined to move Petitioner from his current detention location, Respondents must notify the Court at least 72 hours prior to such movement. *See* Order (Doc. No. 6) at 4. On January 5, 2026, Petitioner filed a Change of Address/Contact Information Form, signed December 31, 2025, notifying the Court that he had been moved to a detention facility in Grand Prairie, Texas. *See* Pet'r's Notice (Doc. No. 15). On January 7, 2026, Respondents filed a Notice confirming that Petitioner had been moved to

this detention center; the Notice did not address the failure to comply with the Order's requirement of 72 hours' prior notice. *See* Resp't's Notice of Jan. 7, 2026 (Doc. No. 16) at 1. Counsel for Respondents advised the Court that ERO "is working to return [Petitioner] to Cim[arr]on Correctional Facility." *Id.*[2]

On January 12, 2026, Respondents filed a second Notice, representing that "Petitioner is scheduled to be moved from his current detention location in order to execute his removal to Mexico after the expiration of 72 hours from this filing." *See* Resp't's Second Notice (Doc. No. 17) at 2. The Court infers from this representation that Mexico has agreed to accept Petitioner's removal to that country.

## II.    Relevant Standards

"The Government's ability to detain, release, and revoke the release of noncitizens subject to removal orders is governed by specific regulations." *Phongsavanh v. Williams*, No. 25-cv-00426, __ F. Supp. 3d __, 2025 WL 3124032, at *2 (S.D. Iowa Nov. 7, 2025). Pursuant to 8 U.S.C. § 1231(a), the Attorney General "shall detain" a noncitizen who is ordered to be removed; this period of detention is referred to as the "removal period." 8 U.S.C. § 1231(a)(1)(A), (2)(A); *see also Zadvydas v. Davis*, 533 U.S. 678, 682 (2001)

---

[2] This Order assumes that Petitioner is confined in this judicial district, consistent with Respondent's representation to the Court and the currently available case record. Even if that assumption is incorrect, the Court would "retain[] jurisdiction" over the matter because Petitioner "properly file[d] a petition" in the Western District of Oklahoma "naming [his] immediate custodian," and any action to move Petitioner outside the Western District of Oklahoma was made by Respondents. *Rumsfeld v. Padilla*, 542 U.S. 426, 441 & n.14 (2004). In such circumstances, regardless of Petitioner's current location and custodian, the Court "may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate [Petitioner's] release." *Id.* at 441.

("When an alien has been found to be unlawfully present in the United States and a final order of removal has been entered, the Government ordinarily secures the alien's removal during a subsequent 90-day statutory 'removal period,' during which time the alien normally is held in custody.").

Section 1231(a)(3) prescribes that when a noncitizen is not removed within this removal period, he or she may be released subject to "supervision" as set forth by relevant regulations. 8 U.S.C. § 1231(a)(3); *see* 8 C.F.R. §§ 241.4, 241.13.

As relevant here, such supervised release may be revoked, and the noncitizen "returned to custody," in two circumstances. 8 C.F.R. § 241.4(*l*)(1), (2). First, for certain noncitizens, revocation of release may be ordered if the noncitizen "violates the conditions of release." *Id.* § 241.4(*l*)(1). Second, "[r]elease may be revoked in the exercise of discretion" by certain DHS officials when, "in the opinion of the revoking official," one of four enumerated factors is applicable. *Id.* § 241.4(*l*)(2); *see also Jimenez Chacon v. Lyons*, No. 25-cv-977, __ F. Supp. 3d __, 2025 WL 3496702, at *10 (D.N.M. Dec. 4, 2025).

### III.   Discussion

In the R. & R., after determining that the Court has jurisdiction to hear Petitioner's claims, Judge Mitchell concluded that ICE failed to follow required procedures in revoking Petitioner's OOS and that Petitioner is therefore entitled to relief pursuant to 28 U.S.C. § 2241(c)(3). *See* R. & R. at 6-8, 9-16; 28 U.S.C. § 2241(c)(3) (prescribing that habeas corpus relief is available to a prisoner "in custody in violation of the Constitution or laws . . . of the United States"); *see also Reno v. Flores*, 507 U.S. 292, 306 (1993) ("It is well

established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings.").[3]

### A. Jurisdiction

In the R. & R., Judge Mitchell rejected Respondent's contention that 8 U.S.C. § 1252(g) deprives the Court of jurisdiction over Petitioner's habeas corpus claim. *See* R. & R. at 6-8; Resp't's Resp. at 16-18. Respondent objects, again arguing that the Court lacks jurisdiction to hear this claim. *See* Resp't's Obj. at 2-5 (citing *Tazu v. Att'y Gen. of U.S.*, 975 F.3d 292 (3d Cir. 2020)).

Section 1252 governs judicial review of orders of removal. "Section 1252(g) strips courts of jurisdiction 'to hear any cause or claim by or on behalf of any noncitizen arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any noncitizen under this chapter.'" *Jimenez Chacon*, 2025 WL 3496702, at *4 (alterations omitted) (quoting 8 U.S.C. § 1252(g)). The statute, however, does not "sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General." *Jennings v. Rodriguez*, 538 U.S. 281, 294 (2018). The Supreme Court has instructed that § 1252(g) instead "refer[s] to just those three specific actions themselves." *Id.* More specifically, "claims that clearly are included within the definition of 'arising from' are those claims connected *directly and immediately* with a decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders." *Tsering v. U.S. Immigr. & Customs Enf't*, 403 F. App'x

---

[3] Based on this determination, Judge Mitchell did not reach Petitioner's claim seeking relief pursuant to the Administrative Procedures Act. *See* R. & R. at 16; Pet. at 6.

339, 343 (10th Cir. 2010) (alteration, omission, and internal quotation marks omitted). Addressing the term "arising from" in a related statutory provision, the Tenth Circuit explained: "A claim only arises from a removal proceeding when the parties in fact are challenging removal proceedings." *Mukantagara v. U.S. Dep't of Homeland Sec.*, 67 F.4th 1113, 1116 (10th Cir. 2023) (discussing 8 U.S.C. § 1252(b)(9)).

Respondent argues that § 1252(g) deprives the Court of jurisdiction because Petitioner here "challenges the fact of his confinement" and because "Petitioner's re-detention is a direct and immediate action resulting from the . . . decision to execute his removal." Resp't's Obj. at 4. The undersigned disagrees. Petitioner is not requesting that the Court review the Executive's decision to execute the order of removal. Rather, Petitioner argues that his "redetention and [his] revocation" were conducted in violation of ICE's own regulations and "violate[] [the] due process clause of the Fifth Amendment." Pet. at 6. Petitioner therefore "does not ask the Court to second-guess Respondents' discretionary decision to commence removal proceedings against him." *Lamas Aguilar v. Bondi*, No. 25-cv-00996, 2026 WL 84520, at *3 n.2 (D.N.M. Jan. 12, 2026). Petitioner instead challenges one of the "many other decisions or actions that may be part of the deportation process"—to which § 1252(g) is inapplicable. *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482, 486 (1999) ("It is implausible that [§ 1252(g)'s] mention of three discrete events along the road to deportation [is] a shorthand way of referring to all claims arising from deportation proceedings."); *see also Ceesay v. Kurzdorfer,* 781 F. Supp. 3d 137, 151 (W.D.N.Y. 2025) ("[D]etention under or in connection with a final order of removal always is related to the execution of an

7

immigration order, but courts routinely hear habeas petitions filed by individuals subject to a final order of removal."). Respondent's citation to a Third Circuit decision is not persuasive in light of governing precedents reflecting "the Supreme Court's consistent use of an exceedingly narrow construction on the jurisdiction channeling provisions" of § 1252. *Montoya v. Holt*, No. CIV-25-1231-JD, 2025 WL 3733302, at *5 (W.D. Okla. Dec. 26, 2025); *see Ceesay*, 781 F. Supp. 3d at 153 (distinguishing the "*brief*" "door-to-plane" detention challenged in *Tazu* from a challenge to "ICE's ability to hold [the petitioner] in detention without adequate process for weeks and months on end").

Although § 1252(g) protects the Executive's prerogative to remove Petitioner, that protection does not preclude judicial review of whether the decision to revoke Petitioner's OOS (and order him to be detained) complied with applicable regulations and due process. Because there was an intervening OOS, the decision to revoke the OOS—a decision for which specific regulatory safeguards have been adopted—is different than the mere execution of Petitioner's prior removal order and, therefore, cannot be characterized as an action directly and immediately connected to execution of removal. Accordingly, the undersigned concludes, as have multiple other district courts, that § 1252(g) does not defeat the Court's exercise of jurisdiction over a petitioner's claim that his current detention is illegal because he was not afforded the process required for revocation of his OOS.[4] Respondent's objection is overruled.

---

[4] *See, e.g.*, *Barrios v. Ripa*, No. 25-cv-22644, 2025 WL 2280485, at *5 (S.D. Fla. Aug. 8, 2025) ("[T]he Court . . . ha[s] jurisdiction to adjudicate whether Respondents complied with their own [OOS] revocation procedures."); *Ceesay*, 781 F. Supp. 3d at 152 (noting that district courts in the Second Circuit "have distinguished between challenges to ICE's

### B. Due Process and ICE's Regulations

In considering Petitioner's habeas claim, Judge Mitchell concluded that Petitioner's OOS was revoked pursuant to 8 C.F.R. § 241.4, specifically § 241.4(*l*)(2), but that Respondents did not comply with that regulation's requirements in effecting that revocation. *See* R. & R. at 9-16. Respondent agrees that 8 C.F.R. § 241.4 governs but objects that the R. & R. incorrectly applied § 241.4(*l*). *See* Resp't's Obj. at 6-7.

When interpreting a regulation, the Court must "carefully consider the text, structure, history, and purpose of a regulation, in all the ways it would if it had no agency to fall back on." *United States v. Maloid*, 71 F.4th 795, 804 (10th Cir. 2023) (internal quotation marks omitted).

In whole, 8 C.F.R. § 241.4(*l*) provides:

(*l*) Revocation of release—

> (1) Violation of conditions of release. Any alien described in paragraph (a) or (b)(1) of this section who has been released under an order of supervision or other conditions of release who violates the conditions of release may be returned to custody. Any such alien who violates the conditions of an order of supervision is subject to the penalties described in section 243(b) of the Act. Upon revocation, the alien will be notified of the reasons for revocation of his or her release or parole. The alien will be afforded an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification.
>
> (2) Determination by the Service. The Executive Associate Commissioner shall have authority, in the exercise of discretion, to revoke release and return to Service custody an alien previously approved for release under the procedures in this section. A district director may also revoke release of an alien when, in the district director's opinion,

---

discretion to execute a removal order, which are barred, and challenges to the manner in which ICE executes the removal order, which are not").

> revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner. Release may be revoked in the exercise of discretion when, in the opinion of the revoking official:
>
>> (i) The purposes of release have been served;
>>
>> (ii) The alien violates any condition of release;
>>
>> (iii) It is appropriate to enforce a removal order or to commence removal proceedings against an alien; or
>>
>> (iv) The conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate.
>
> (3) Timing of review when release is revoked. If the alien is not released from custody following the informal interview provided for in paragraph (l)(1) of this section, the HQPDU Director shall schedule the review process in the case of an alien whose previous release or parole from immigration custody pursuant to a decision of either the district director, Director of the Detention and Removal Field Office, or Executive Associate Commissioner under the procedures in this section has been or is subject to being revoked. The normal review process will commence with notification to the alien of a records review and scheduling of an interview, which will ordinarily be expected to occur within approximately three months after release is revoked. That custody review will include a final evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release. Thereafter, custody reviews will be conducted annually under the provisions of paragraphs (i), (j), and (k) of this section.

8 C.F.R. § 241.4(*l*).

### 1. The Applicability of 8 C.F.R. § 241.4(l)(3)

Respondent states that, as presumed by Judge Mitchell, Petitioner's supervised release was revoked pursuant to § 241.4(*l*)(2). *See* Resp't's Obj. at 6; R. & R. at 10. Respondent argues, however, that § 241.4(*l*)(2) operates independently of the other two subsections. *See* Resp't's Obj. at 6-8. More specifically, Respondent contends that the

10

requirements of notice and an informal interview in § 241.4(*l*)(1), and of a review process and interview in § 241.4(*l*)(3), are not applicable to noncitizens whose release is revoked pursuant to § 241.4(*l*)(2). *See id.* Respondent has not cited authority for this position, and "courts have consistently held otherwise." *Zhu v. Genalo*, 798 F. Supp. 3d 400, 410 (S.D.N.Y. 2025) ("While not a model of clarity, the text of 8 U.S.C. § 241.4(*l*) is inconsistent with the Government's argument that Petitioner was not entitled to notice or an interview.").

The undersigned likewise rejects Respondent's reading of the regulation. Section 241.4(*l*)(2) designates the "Executive Associate Commissioner" (or, when the case cannot reasonably be referred to the Executive Associate Commissioner, a "district director") as the individual who may exercise discretion, in accordance with the four enumerated factors, to revoke an individual's release and return the noncitizen to custody. 8 C.F.R. § 241.4(*l*)(2). Section 241.4(*l*)(3) then provides that "the HQPDU Director shall schedule the review process" whenever the "previous release" of a noncitizen "pursuant to a decision of either the district director, Director of the Detention and Removal Field Office, or Executive Associate Commissioner under the procedures in this section" "has been or is subject to being revoked." *Id.* § 241.4(*l*)(3). This provision is most reasonably read to subject the decision to revoke a noncitizen's release under subsection (*l*)(2) to "the review process" of subsection (*l*)(3). *Id.*

Therefore, the Court finds, as have other courts to consider the question, that the notice and interview requirements of § 241.4(*l*)(3) apply to revocations conducted pursuant to § 241.4(*l*)(2). *See Zhang v. Genalo*, No. 25-CV-06781, __ F. Supp. 3d __, 2025 WL

11

3733542, at *10 (S.D.N.Y. Dec. 28, 2025); *Funes v. Francis*, No. 25 Civ. 7429, __ F. Supp. 3d __, 2025 WL 3263896, at *16 (S.D.N.Y. Nov. 24, 2025).[5]

### 2. Compliance with 8 C.F.R. § 241.4(l)

The next question is whether Respondents complied with the requirements of their own regulations and of due process generally in revoking Petitioner's OOS.

"[T]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (internal quotation marks omitted). "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. Further, "the Due Process Clause protects an alien subject to a final order of deportation, though the nature of that protection may vary depending upon status and circumstance." *Id.* at 693-94 (citation omitted); *see also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020) ("While aliens who have established connections in this country have due process rights in deportation proceedings, the Court long ago held that Congress is entitled to set the conditions for an alien's lawful entry into this country and that, as a result, an alien at the threshold of initial entry cannot claim any greater rights under the Due Process Clause.").

---

[5] Based upon the determination herein as to the applicability of § 241.4(*l*)(3), the Court need not decide whether § 241.4(*l*)(1) also imposes procedural requirements upon a § 241.4(*l*)(2) revocation of release. Numerous courts hold, however, "that the text of § 241.4(*l*) sets forth a unified set of procedures governing the revocation of release." *Funes*, 2025 WL 3263896, at *16; *see also Zhu*, 798 F. Supp. 3d at 412 ("[R]edetention under section 241.4 requires notice and an informal interview, even when a noncitizen is detained because it is 'appropriate to enforce a removal order' under paragraph (*l*)(2)(iii)").

Section 241.4(*l*)(3) outlines a "normal review process" that begins "with notification to the alien of a records review and scheduling of an interview," as well as a "custody review" that "include[s] a final evaluation of any contested facts relevant to the revocation and determination whether the facts as determined warrant revocation and further denial of release." 8 C.F.R. § 241.4(*l*)(3). The notification therefore provides the noncitizen information as to why and on what legal basis his or her release is being revoked, and the interview and custody review constitutes an opportunity to challenge that decision.

Respondent argues that Petitioner was not entitled to written notice of the reason for his revocation and that he was verbally "advised upon his revocation as to the reasons for his revocation." *See* Resp't's Obj. at 9-11. In support, Respondent cites the Declaration of Victor Figueroa, an ERO deportation officer who met with Petitioner on the day he was placed in custody. *See* Figueroa Decl. (Doc. No. 10-2). Officer Figueroa states that he "advised [Petitioner] he had a final order of removal entered by the [Immigration Judge] on October 1, 2003," and that "[Petitioner] had no pending [Bureau of Immigration Appeals] appeals or pending immigration applications at [that] time." *Id.* ¶ 4. Officer Figueroa further attests that Petitioner "stated he understood," "did not make any complaints," or "state he had any questions at the time." *Id.*

Without deciding whether written notice is required, the Court finds that the advisement given Petitioner did not constitute sufficient "notice" for the purpose of due process. Although the R. & R. concludes and Respondent does not contest that Petitioner's release was revoked pursuant to 8 C.F.R. § 241.4(*l*)(2), Respondent has not produced any evidence as to the specific basis of Petitioner's revocation under subsection (*l*)(2) or of

13

whether Petitioner informed of any such legal or factual basis for his revocation. In particular, Officer Figueroa's statements to Petitioner on July 31, 2025, did not inform Petitioner of a regulatory provision—e.g., § 241.4(*l*)(2)(i), (ii), (iii), or (iv)—properly relied upon to revoke Petitioner's release. Merely stating that there was a prior order of removal and that it is a final order would not constitute the required notice or even substantially comply with the notice requirement.[6]

Further, there is no indication in the record that Petitioner has since been provided the interview and custody review process required by § 241.4(*l*)(3). Respondent states that "ERO has completed a 90-day custody review, and the decision is pending." Resp't's Resp. at 8; *see* Robles Decl. ¶ 13 (Doc. No. 10-1). But such a separate review does not remedy Petitioner's failure to receive notice of the legal basis for his revocation or an interview permitting him to challenge that revocation.

Petitioner's ongoing re-detention is therefore violative of ICE's regulations and of his rights under the Fifth Amendment. *See* 8 C.F.R. § 241.4(*l*)(3). The undersigned overrules Respondent's objection and adopts the R. & R. in relevant part.

### C. Remedy

Finally, Judge Mitchell concluded that the appropriate remedy for the lack of notice afforded to Petitioner and resulting failure to properly revoke Petitioner's OOS is to release Petitioner and reinstate Petitioner's OOS. *See* R. & R. at 15-16.

---

[6] Illustrative of the point, the Magistrate Judge was required to deduce which provision authorized Petitioner's revocation by a process of elimination because no evidence had been submitted affirmatively indicating the actual provision upon which ICE relied. *See* R. & R. at 9-11. Petitioner would have been faced with the same difficulty.

Respondent objects, arguing that any failure should be reviewed under the harmless-error framework, which Petitioner fails to meet, and that failure to comply with the regulation does not permit relief under 28 U.S.C. § 2241(c)(3). *See* Resp't's Obj. at 12-15.

This Court, in agreement with the majority view, has "found that such regulatory defects amount to due process violations that entitle a petitioner to habeas relief." *Hamidi v. Bondi*, No. CIV-25-1205-G, 2025 WL 3452454, at *3-4 (W.D. Okla. Dec. 1, 2025) (internal quotation marks omitted); *see also Pham v. Bondi*, No. CIV-25-1157-SLP, 2025 WL 3243870, at *1 (W.D. Okla. Nov. 20, 2025).[7]

This matter is distinguishable from *Bahadorani v. Bondi*, No. CIV-25-1091-PRW, 2025 WL 3048932 (W.D. Okla. Oct. 31, 2025), *appeal docketed*, No. 25-6177 (10th Cir. Nov. 4, 2025). Unlike *Bahadorani*, where the petitioner was "provided the reasons for his detention," *id.* at *3, Respondent here failed to provide notice that informed Petitioner of the reasons for his revocation prior to any opportunity he was provided to challenge his revocation, *see Hamidi*, 2025 WL 3452454, at *3-4. Further, the Court is not convinced that this litigation cures Respondents' failure to comply with their own regulations because as of yet Respondents have not produced evidence that would effectively add up to proper notice of a revocation made pursuant to 8 C.F.R. § 241.4(*l*)(2).

---

[7] Respondent's reference to *Wright v. Lansing*, 75 F. App'x 710 (10th Cir. 2003), does not alter the Court's conclusion because the petitioner there received the process he was due, while Petitioner here did not. *See Wright*, 75 F. App'x at 712. *Wright*, in fact, cuts against Respondent's argument that a regulatory violation cannot be the basis for habeas relief, *see* Resp't's Obj. at 14-15: "Where a liberty or property interest has been infringed, the process which is due under the United States Constitution is that measured by the due process clause, not prison regulations," *Wright*, 75 F. App'x at 712.

In this instance, Respondents' failure to comply with § 241.4(*l*)(3) resulted in re-detention, accompanied by a lack of notice or a meaningful opportunity to respond, that violated both § 241.4(*l*) and Petitioner's Fifth Amendment right to due process. Habeas corpus relief is warranted. *See* 28 U.S.C. § 2241(c)(3); *Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process] Clause protects.").

## CONCLUSION

In accordance with the above, the Report and Recommendation (Doc. No. 13) is ADOPTED in relevant part.

It is further ordered that:

1. The Petition for Writ of Habeas Corpus (Doc. No. 1) is GRANTED to the extent it requests habeas relief pursuant to 28 U.S.C. § 2241.

2. Petitioner's remaining claim for relief is DISMISSED without prejudice.

3. Respondents are directed to either:

    a. Within three (3) days of the date of this Order, provide Petitioner Miguel Montero Guerra with notification of a records review pursuant to 8 C.F.R. § 241.4(*l*)(3), and thereafter the scheduling of an interview and custody review pursuant to 8 C.F.R. § 241.4(*l*)(3); or

    b. Immediately release Petitioner Miguel Montero Guerra into the United States, subject to the terms of his previous Order of Supervision.

4. Respondents shall submit a declaration pursuant to 28 U.S.C. § 1746 within five (5) days of the date of this Order affirming either Petitioner's release from custody into the United States or that the prescribed notification has been served on Petitioner.

IT IS SO ORDERED this 15th day of January, 2026.

                                                  CHARLES B. GOODWIN
                                                  United States District Judge